UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NGI CAPITAL, INC. d/b/a APEX IT,

Plaintiff,

-against-

WATLOW ELECTRIC MANUFACTURING COMPANY,

Defendant.
-----------------------------------------------------------x

25-cv-5683 (PKC)

OPINION AND ORDER

CASTEL, U.S.D.J.

Plaintiff NGI Capital, Inc., d/b/a Apex IT (Apex"), a vendor of IT services, brings a breach of contract action against defendant Watlow Electric Manufacturing Company ("Watlow") for non-payment for services. It also brings claims for quantum meruit, unjust enrichment and account stated. Watlow moves to dismiss the Complaint for failure to state a claim for relief.

For reasons explained, the Court concludes that the FAC states a claim for breach of contract. The Court allows the claims for quantum meruit, unjust enrichment and account stated to stand, but only for work performed by Apex and accepted by Watlow that was beyond the Statement of Work or any accepted change order.

## BACKGROUND

For purposes of the motion, the Court accepts the Complaint's well-pleaded allegations as true and draws all reasonable inferences in favor of the non-movant plaintiffs. See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007).

NGI's First Amended Complaint ("FAC") annexes a Master Services Agreement ("MSA") (ECF 18-1), a Statement of Work ("SOW") (ECF 18-2), slide decks, a meeting agenda, and a host of email chains. (ECF 18-3 – 18-19.)

Apex and Watlow entered into the MSA in August 2022 for Apex to provide services regarding the implementation of software called Oracle CX. (ECF 24 ¶ 6.) The SOW, executed on February 16, 2023, describes the services to be performed by Apex on a "Time and Materials basis" with "estimate[d]" fees and estimated timeline set forth in the SOW. (Id. ¶¶ 14-15; ECF 18-2.) Apex alleges that it performed services from November 2022 through September 2023 for which it billed Watlow and that Watlow paid in full. (ECF 24 ¶ 16.)

An incident occurred in September 2023 (the failed "Functional Settlement Migration" or "FSM") that Apex contends was not caused by it. (Id. ¶¶ 20-21, 28-29.) But the incident required several weeks of Apex's work to be redone. (Id. ¶ 26.) The parties discussed options for dealing with the fallout from the failed FSM. One option was to delay the "go-live" date for the project from January 29, 2024, to March 4, 2024, which would allow more development and testing; the other option was to stick with the January 29 date and forgo additional time for development and testing. (Id. ¶¶ 36-40.) Watlow, according to Apex, elected to keep the January go-live date with the attendant risk and consequences. (Id. ¶ 40.)

Watlow is alleged to have not paid invoices issued to them on October 8, 15 and 22 (two invoices), 2023. (Id. ¶¶ 41-44.) Watlow is alleged to have only partially paid 24 invoices issued between January and April 2024. (Id. ¶¶ 48-49, 58-59.) As of April 2024, there was an outstanding balance of over $2 million, and Watlow had stopped paying any amount on

some invoices altogether. (Id. ¶¶ 64-65.) Apex alleges that the Oracle CX implementations and other associated work went live for Europe on or about April 29, 2024. (Id. ¶ 66.)

Apex and Watlow remained in communication and Apex continued to perform certain work through September 2024, when, Apex alleges, it "concluded its work for Watlow . . . ." (Id. ¶ 93.) Apex alleges that it was not until August 20, 2024, that Watlow first provided a list of purported deficiencies in Apex's work. (Id. ¶ 128.) Apex alleges that "Watlow received the benefit of Apex IT performing the Services, and, upon information and belief, continues to utilize the Oracle software solution for which Apex IT performed the implementation." (Id. ¶ 151.)

Apex also alleges it performed work that Watlow knowingly accepted, even as Watlow declined to sign a change order or otherwise pay for the work. (Id. ¶¶ 143-51.)

Watlow, in its motion to dismiss, asserts that ". . . Apex IT struggled to perform under the MSA, resulting in significant and disruptive delays, numerous change orders, and excessive challenges with implementing Oracle CX for Watlow throughout 2024." (ECF 29 at 10.) The veracity of the claims and responses of NGI and Watlow are not for resolution on a motion to dismiss.

DISCUSSION

I. Standard on a Motion to Dismiss.

"A motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint. The test of a claim's 'substantive merits' is 'reserved for the summary judgment procedure, governed by [Rule] 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule.'" Goel v. Bunge, Ltd., 820

F.3d 554, 558-59 (2d Cir. 2016) (quoting Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)) (citation omitted).

Rule 12(b)(6), Fed. R. Civ. P., requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A sufficient complaint must include non-conclusory factual allegations that move its claims "across the line from conceivable to plausible." Id. at 680 (quoting Twombly, 550 U.S. at 570).

In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. at 678. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll International, 231 F.3d 82, 86 (2d Cir. 2000)).

A court reviewing a motion to dismiss "take[s] no account of [the complaint's] basis in evidence" and "may review only a narrow universe of materials." Goel, 820 F.3d at 559. Such materials include documents incorporated in the complaint, matters of which judicial notice may be taken, and documents that are "integral" to the complaint, even if they are not expressly

incorporated. Id.; see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (stating that a document is "integral" to a complaint where the complaint "relies heavily upon its terms and effect"). On this motion, the Court may consider the exhibits to the FAC that are incorporated into the pleading.

## II. Plaintiff Plausibly States a Claim for Breach of Contract.

Because the Complaint invokes this Court's diversity jurisdiction, the Court applies New York choice of law principles. Here, the MSA contains a New York choice of law provision. (ECF 18-1 ¶ 26 ("This Agreement shall be construed in accordance with and governed for all purposes by the laws and public policy of the State of New York, excluding its conflict of laws principles.")) So, New York substantive law controls these contract-based claims. See N.Y. Gen. Oblig. L. § 5-1401; Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996) ("New York law gives full effect to parties' choice-of-law provisions . . . .").

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (internal quotation marks omitted); see Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011).

Apex's FAC alleges the formation and existence of a contract with Watlow, i.e., the MSW and the SOW issued thereunder. (ECF 18-1, 18-2); (see also ECF 24 ¶ 153 ("The MSA and SOW are valid and enforceable contracts between Apex IT and Watlow."))

The FAC adequately alleges performance of contractual obligations by NGI. (See, e.g., id. ¶ 46 ("In December 2023, Apex IT was on track under the compressed schedule"),

¶ 48 (". . . Watlow underpaid some of Apex IT's invoices for work done under the original SOW."), ¶ 49 (same), ¶ 58 (same), ¶ 59 (same), ¶ 93 ("Apex IT finally concluded its work for Watlow in September 2024"), ¶ 154 ("Apex IT has fully performed its obligations to Watlow under the MSA and SOW.") (emphasis added)).

It also adequately alleges the failure of Watlow to perform its contractual obligations. (See, e.g., id. ¶ 105 (". . . Watlow did not pay invoice 22426, for work done pursuant to the SOW"), ¶ 106 (same), ¶ 107 ("Watlow also underpaid invoices . . . ."), ¶ 126 ("As of August 20, 2024, Watlow owed Apex IT $1,172,955.42."), ¶ 157 ("Watlow has breached the Agreement by failing to pay Apex IT for the services performed under the MSA and SOW."))

The FAC also alleges the amount of damages. (See id. ¶ 158 ("As a result of the breach of contract, Apex IT has been damaged in the amount of at least $1,075,409.65, together with costs and interest . . . ."))

The foregoing was all that Apex was required to allege in order to state a claim for breach of contract. See Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .") Indeed, if Apex is to be faulted, it is for filing a pleading that is prolix and replete with unnecessary evidentiary detail.

The Court has no doubt that there is another side to the underlying dispute as Watlow contends. But a motion to dismiss is not the proper juncture to sort out what amount, if any, is owed in this contentious dispute. Nor is it the place to resolve issues of contract interpretation untethered to the yet-to-be-developed facts of the case. Plaintiff has plausibly alleged a claim for breach of contract.

III. The Quantum Meruit and Unjust Enrichment Claims Will Not Be Dismissed To the Extent That They Encompass Work Accepted by Watlow But Beyond the Scope of the SOW or an Accepted Change Order.

"The essential inquiry in any action for unjust enrichment is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. A plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011) (quotation marks, ellipsis and internal citations omitted). "The elements of a cause of action sounding in quantum meruit are (1) performance of services in good faith, (2) acceptance of services by the person to whom they are rendered, (3) expectation of compensation therefor, and (4) reasonable value of the services rendered." Evans-Freke v. Showcase Contracting Corp., 85 A.D.3d 961, 962 (2d Dep't 2011).

"Applying New York law, [courts] may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005). "New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." Id. To determine whether the quasi-contact claims are duplicative of the breach of contract claim, a court examines whether they arise from the same facts and allege the same injury. NetJets Aviation, Inc. v. LHC Communications, LLC, 537 F.3d 168, 175 (2d Cir. 2008).

The quantum meruit and unjust enrichment claims arise out of the same facts as the breach of contract claim with one possible exception: worked performed by Apex that Watlow accepted but for which Watlow neither paid nor approved a "change order." The FAC

can reasonably be read to allege that Watlow, on multiple occasions, accepted services from Apex without approving "change orders." (ECF 24 ¶ 144 ("Watlow expressly directed Apex IT to perform the work covered by the change orders, even though they were unsigned by Watlow, and, indeed, Watlow requested further and additional work."), ¶ 147 ("Watlow did not challenge any of the work at the time it was performed."); see also id. ¶¶ 114, 118, 120, 143, 148.) In such instances, Apex's quasi-contractual claims may apply.[1]

The quantum meruit and unjust enrichment claims will stand but only to the extent that they encompass work knowingly accepted by Watlow that is not within the SOW, or an accepted change order.

## IV. The Account Stated Claim Will Stand but Only for Work Accepted By Watlow But Beyond the Scope of the SOW or an Accepted Change Order.

"An account stated is an agreement between parties, based upon their prior transactions, with respect to the correctness of the account items and the specific balance due. Although an account stated may be based on an express agreement between the parties as to the amount due, an agreement may be implied where a defendant retains bills without objecting to them within a reasonable period of time, or makes partial payment on the account. The 'agreement' at the core of an account stated is independent of the underlying obligation between the parties." Holtzman v. Griffith, 162 A.D.3d 874, 875-76 (2d Dep't 2018) (quotation marks and internal citations omitted).

[1] The breach of contract, quantum meruit and unjust enrichment claims allege precisely the same damages down to the penny as the breach of contract claim, $1,075,409.65. (ECF 24 at ¶¶ 158, 165 & 173.) That, of course, does not foreclose proving a different amount on the quasi-contractual theory covering only work outside the contract.

While a plaintiff typically may pursue a claim for both account stated and breach of contract, it may not do so "simply as another means to attempt to collect under a disputed contract." Martin H. Bauman Assoc. v. H & M Intl. Transp., 171 A.D.2d 479, 485 (1st Dep't 1991); see also Centrans Truck Lines, LLC v. Orient Express Container Co. Ltd., 2023 WL 5390220, at *7 (S.D.N.Y. Aug. 21, 2023) (dismissing account stated claim that "is clearly congruent with, and duplicative of, the claim for breach of contract . . . ." (internal quotation marks omitted)) (Vyskocil, J.); Murray Engineering P.C. v. Remke, 2018 WL 3773991, at *10 (S.D.N.Y. Aug. 9, 2018) ("A defendant cannot be found liable on both an account stated claim and a breach of contract claim in connection with the same allegations of a failure to pay monies owed." (alterations and quotation marks omitted)) (Failla, J.).

A portion of Apex's work could plausibly fall within the account stated claim, i.e., work performed by Apex and accepted by Watlow that falls outside the SOW or an accepted change order. (See ECF 24 ¶ 146 ("Watlow timely received invoices for all of the work Apex IT performed covered by the unsigned change orders."))

CONCLUSION

The motion to dismiss is DENIED as to the claim for breach of contract (first cause of action) and GRANTED in part and DENIED in part as to the claims for quantum meruit, unjust enrichment and account stated (second, third and fourth causes of action).

The parties shall confer and submit a Case Management Plan and proposed Scheduling Order by October 14, 2026.

The Clerk is directed to terminate the motion. (ECF 28.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 30, 2026